IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>ROBERT C. RINEHART,<br><br>      Debtors.<br><br>---<br><br>ROBERT C. RINEHART,<br><br>      Plaintiff/Appellant,<br><br>vs.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>      Defendant/Appellee. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:12CV465DAK<br><br>Judge Dale A. Kimball<br><br>Bankruptcy Case No. 09-27541 |

      This matter is before the court on Appellant Robert C. Rinehart's appeal of the Bankruptcy Court's April 27, 2012 final Order overruling Rinehart's Objection to JP Morgan Chase's Claim.   The court held oral argument on the appeal on October 3, 2012.  At the hearing, Rinehart was represented by Paul Toscano, and Appellee JP Morgan Chase ("Chase") was represented by James D. Gilson.  The court heard arguments from counsel and took the appeal under advisement.  After carefully considering the briefs and exhibits submitted by the parties, the arguments advanced by counsel at oral argument, the ruling of the Bankruptcy Court, and the law and facts relating to this appeal, the court renders the following Memorandum Decision and Order affirming the Bankruptcy Court's order.

**BACKGROUND**

Rinehart appeals the Bankruptcy Court's denial of his Objection to Chase's Claim in his Chapter 11 bankruptcy action. Chase's claim was made based on a mortgage loan secured by property owned by Rinehart. Rinehart objected to the claim for the face amount of the Note or the value of the collateral, arguing that the claims should instead be for the amount Chase paid the FDIC for the purchase of the Note.

On June 7, 2007, Rinehart's wife, Carolyn Rinehart, executed an adjustable rate note ("Note") in favor of Washington Mutual ("WaMu") in the original principal amount of $1,885,000.00. The Deed of Trust executed in connection with the Note states that the Note is secured by real property owned by Rinehart and his wife as joint tenants.

The Note expressly states that the "Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder." Mrs. Rinehart also represented that she would make her "payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note." The Trust Deed similarly states that "Borrower has promised to pay [$1,885,000.00 plus interest] in regular Periodic Payments and to pay the debt in full not later than July 01, 2037," and that the "Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."

On September 25, 2008, the United States Office of Thrift Supervision ("OTS") seized WaMu and placed it into an FDIC receivership. The FDIC sold and transferred WaMu's assets to Chase that same day pursuant to a written Purchase and Assumption Agreement. Such assets included the Note and Trust Deed at issue in this matter.

On November 1, 2008, Chase and Mrs. Rinehart executed a Loan Modification Agreement that modified the Note, which, in part, increased the principal owing to $1,950,286.85. On July 20, 2009, Debtor filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. On January 16, 2012, Chase filed its Proof of Claim evidencing its claim against the property. On March 15, 2012, Rinehart filed an objection to the claim, arguing that it should be reduced to the amount that Chase allegedly paid to the FDIC to acquire the Note and Trust Deed.

The Bankruptcy Court held a hearing on the Objection and found that "there's no basis in law for the relief requested by the debtor. No case authority and no–I don't think the statute supports the argument. I also [conclude] that there's no basis in equity. There has been no injury to the debtor. There has been no injury to creditor's by the assignment." Accordingly, the Bankruptcy Court overruled Rinehart's Objection to JP Morgan Chase's claim. Rinehart then filed this appeal.

## DISCUSSION

Rinehart appeals the Bankruptcy Court's denial of his Objection to Chase's Claim and seeks correction of the Bankruptcy Court's interpretation and application of the meaning of the language "creditor's interest" in 11 U.S.C. § 506(a)(1). Section 506(a)(1) provides that

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

Rinehart argues that the Bankruptcy Court erred in interpreting the language "creditor's interest" to mean something other than the amount Chase paid the FDIC for Rinehart's Note. Rinehart contends that he was prepared to testify that the estimated discounted price Chase paid the FDIC was approximately $.00068 of the face value of the Note–or $14,000 for a Note with a face value of approximately $1,950,000.00. Chase asserts, however, that Rinehart's calculation of the acquisition price is pure speculation and, even if Chase acquired the Note and Trust Deed at a discount, Rinehart's theory that the claim should be limited to such amount is a completely novel theory with no basis in law or equity.

In *Timbers of Inwood*, the Supreme Court analyzed Section § 506(a)(1) for purposes of interpreting the phrase "interest in property" in § 362(d)(1). *United Savings Ass'n v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365 (1988). The Court stated that "[i]n subsection (a) of [§ 506] the creditor's 'interest in property' obviously means his security interest without taking account of his right to immediate possession of the collateral on default. If the latter were included, the 'value of such creditor's interest' would increase, and the proportions of the claim that are secured and unsecured would alter. . . . The phrase value of such creditor's interest in § 506(a) means 'the value of the collateral.'" *Id.* at 372. Because the Court determined that a "creditor's interest" under § 506(a) strictly means "the value of the collateral," the court held that a creditor's "interest in property" under § 362(d)(1) did not include the immediate right to foreclose. *Id.*

Therefore, in *Timbers of Inwood*, the Supreme Court has already decided the legal issue presented in Rinehart's appeal. The phrase "creditor's interest" refers to neither the "face value of the Trust Deed Note" nor to the alleged "discounted acquisition price" paid by Chase for the

Note. Rather, as determined by the Supreme Court, that phrase refers to the value of the creditor's collateral.

Rinehart claims that the legislative history of 11 U.S.C. § 506 and two other United States Supreme Court cases support his interpretation of the language "creditor's interest." The legislative history of the Bankruptcy Code states that "the bill requires the court to value the secured creditor's interest. To the extent of the value of the security interest, he is treated as having a secured claim, entitled to be paid in full under the plan, unless, of course, he accepts less than full payment." But this language, discussing a distinction between the value of a creditor's interest and the value of collateral securing that interest, does not establish that a claim assigned from one creditor to another becomes the amount the latter paid to the former to purchase the debt.

Rinehart further asserts that the components of the valuation of a creditor's interest recognized in the legislative history were recognized in *Dewsnup v. Timm*, 502 U.S. 410 (1992), and *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993). In *Dewsnup*, the Court held that any increase in the value of the collateral accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain." 502 U.S. at 417. Similarly, in *Nobelman*, the Court emphasized the rights that were "bargained for by the mortgagor and the mortgagee." 508 U.S. at 329.

In this case, Rinehart contends that Chase had nothing to do with the mortgagor-mortgagee bargain and that the Rinehart's only had a relationship with WaMu, who advanced loan proceeds to them. These two Supreme Court cases, however, are unpersuasive because

5

they deal with the concept of "lien stripping," which is not at issue in this appeal. The holding in *Dewsnup*, was that § 506 does not allow a debtor to "strip down" or reduce a creditor's lien to the value of the collateral and render unsecured any debt in excess of the value of the collateral. 502 U.S. at 417. This is a fundamentally different issue. Moreover, the Tenth Circuit has held that *Dewsnup* only applies in Chapter 7 cases whereas Rinehart has a Chapter 11 bankruptcy cae. *Wade v. Bradford*, 39 F.3d 1126, 1128 (10th Cir. 1994). *Nobelman* also deals with the concept of lien stripping, but in the Chapter 13 context. Again, Rinehart is not trying to strip Chase's lien down to the value of the property. Rather, Rinehart is arguing that Chase should be limited to the acquisition price it paid to the FDIC. Neither case supports such a position. Both *Dewsnup* and *Nobelman* rely on the value of collateral for purposes of determining whether or not the lien at issue should be stripped. Thus, both cases are consistent with *Timbers of Inwood*.

Furthermore, Rinehart contends that his argument on the inadequacy of the discounted acquisition price is supported by the avoiding powers conferred on a Chapter 7 trustee. Rinehart claims that if WaMu had been eligible for and had filed Chapter 7, its Chapter 7 trustee would have a cause of action against the FDIC and Chase for fraudulent conveyance of the Note and Trust Deed based on the alleged inadequacy of the acquisition price. In such a situation, Rinehart asserts the trustee could have recovered the Note and auctioned it for the highest and best price. Rinehart argues that his position is consistent with the holding of the Supreme Court in *Associates Commercial Corp. v. Rash*, 117 S. Ct. 1879 (1997), that courts must consider "the 'proposed disposition or use' of the collateral in determining its value" and, therefore, the "creditor's interest" in the collateral. In this case, the disposition of the collateral that Rinehart seeks is not the continued occupation of the residence. Instead, Rinehart has proposed a Chapter

6

11 plan to liquidate the residence before the end of 2012 for the highest and best price.  Rinehart claims that this disposition must be taken into account in valuing the "creditor's interest" under § 506(a)(1).  Rinehart states that if they intended to continue living in the residence, then full payment of the Note's face value would make sense because the Rinehart's recognize that they should pay for a residence they intend to occupy.  But, in view of the intended liquidation of the collateral by a stated deadline, Rinehart contends that it makes no sense for Chase to receive all the liquidation sale proceeds because it was not a party to the bargain between the mortgagor and mortgagee and it did not advance the original loan proceeds.  Therefore, he claims that there is no benefit of the bargain to protect.

  The *Rash* case is inapplicable to this case because it relates only to valuation.  Rinehart is not challenging the value of the property on this appeal.  Because this appeal does not relate to the value of the property, Rinehart's arguments regarding the best methods for valuing a creditor's collateral under the cram-down provisions of the bankruptcy code are irrelevant.

  Moreover, Rinehart's attempts to argue that only WaMu should be able to benefit from the value of the property securing the Note because it was the original creditor are without merit.  His arguments ignore the terms of the Note and Trust Deed as well as established law.  The Note states that the "Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder."  Rinehart's obligations are not changed when there is a transfer of the Note Holder.  Chase became the Note Holder when it acquired all of  WaMu's rights and remedies under the Note and Trust Deed.

  Federal and state law support the conclusion that a creditor's rights under a mortgage loan can be assigned freely and without impairment.  There is no legal or factual support for

Rinehart's position that Chase obtained a lesser interest in the property than WaMu enjoyed when Chase acquired WaMu's assets.

Rinehart has no standing to challenge the FDIC's sale of the Note to Chase. The Note states it can be sold or assigned without notice. Whether or not the Note was sold or assigned to another Note Holder, Mrs. Rinehart promised to pay all of the principal and interest. In the event that she failed to make those payments, she and Rinehart pledged the property under the Trust Deed as security for the Note. Rinehart does not dispute that Mrs. Rinehart received the loan proceeds or that the property is pledged as collateral. The fact that the Note was assigned did not alter the obligation to pay the Note in full.

Rinehart also argues that the Bankruptcy Code and Utah Law both protect the equity interests of debtors. These statutes recognize and protect equities by requiring the value of the collateral to be applied in priority order to the payment of the obligations owed to creditors as well as the equities of the seller/debtor. Rinehart claims that the allegedly discounted acquisition price Chase paid to the FDIC is tantamount to inadequate consideration paid at a foreclosure sale. Inadequate consideration paid at forced sales of residential realty is not favored under Utah law and Utah courts have set aside foreclosure sales for the inadequacy of price paid and unfairness. *See Pyper v. Justin C. Bond, et al.,* 2011 UT 45, 258 P.3d 575 (July 29, 2011). In this case, Rinehart argues that there are more than slight circumstances of unfairness based on Chase's acquisition price of the Note.

But there is no basis in equity for Rinehart's position. Rinehart's reliance on *Pyper v. Boyd* is unfounded. *Pyper* deals with the right of redemption under the foreclosure statute and the grounds necessary to set aside a sheriff's sale of property. Unlike *Pyper*, this case does not

8

involve an inadequate bid at a foreclosure sale that could result in a debtor being doubly liable on a debt. This appeal deals with the amount Chase paid the FDIC for the Note, which transaction did not alter Rinehart's or Mrs. Rinehart's obligations under the Note, nor did it prejudice them in any way.

Rinehart's theory for limiting the claim to the amount it paid the FDIC for the Note is not supported by any of the authorities to which he cites and is inconsistent with the Supreme Court's construction of § 506(a)(1) in *United Savings Ass'n v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365 (1988), which defined "creditor's interest" as "the value of the collateral." Moreover, it is well established that mortgage loans may be assigned from one creditor to another without any impairment to the assignee's ability to enforce the loan terms against the debtor. Therefore, the Bankruptcy Court's Order on Debtor's Objection is affirmed.

## CONCLUSION

Based on the above reasoning, the court finds Rinehart's challenges to the Bankruptcy Court's ruling to be without merit and the court affirms the Bankruptcy Court's ruling in its entirety. Because this Memorandum Decision and Order disposes of the appeal, the Clerk of Court is directed to close the case.

DATED this 26th day of October, 2012.

BY THE COURT:

_____
DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE

9